## TINGLE v. UNITED STATES.
### No. 8699.

Circuit Court of Appeals, Eighth Circuit.
Jan. 20, 1930.

574

Forest W. Hanna, of Kansas City, Mo. (C. C. Madison and Hanna & Hurwitz, all of Kansas City, Mo., on the brief), for appellant.

Harry L. Thomas, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge.

Appellant was an oil jobber with his place of business at 2932 Fairmount avenue in Kansas City, Mo. January 1, 1926, he took a ten-year lease upon a large warehouse at that location. The building is two stories in height, and covers about 22,500 square feet. Appellant used it for the storage of oils handled in his jobbing business, and also sublet some space. June 22, 1927, prohibition officers raided the place and found in a long narrow room, on the south side of the first floor of the warehouse, five steel vats with a capacity of 1,250 gallons, two of which were partially full of beer containing 5.8 per cent. of alcohol by volume. In addition to this were found a number of kegs, some containing beer, others empty; two tall steel carbonating tanks, each with a capacity of 1,250 gallons, together with all the customary paraphernalia of a fully equipped brewery. The room in question was eighteen feet by forty feet in size and was entered only through the warehouse. The officers found its door fastened, and entered by breaking the lock. The brewery was not in operation and no one was found in charge. In a small room adjoining the brewery proper, on the west, was a desk and chair.

A buzzer connected this room with the brewery. Appellant's office was on the second floor. He was not present when the officers entered. At the warehouse they found two employees of appellant,—a man named Elmer Hoard, and a woman who gave her name as Johnson. Upon learning the business of the officers Hoard admitted them to the warehouse, and the woman called appellant by telephone. On his arrival, Tingle produced a key to the brewery door, which, however, had theretofore been forced by the officers. The next day he made two signed statements in the presence of the Assistant United States Attorney, in which he stated that he had rented this space to a man introduced to him as Jack Williams by two other men named as Fritz Malloy and Bob Rippen. He was paid $600 per month for the use of this space, and was fully aware of the pur-

pose for which it was to be used. In these statements he says he met Malloy and Rippen about a year before, at which time they unloaded a car of alcohol on his switch track. For this use of his track he had received $25. A little later he leased the track again for the same purpose. The statement names as other parties to the brewery enterprise, one Thomas Church, and one Edward Hohmann. Later an indictment was returned in the District Court for the Western District of Missouri, charging Bob Rippen, Frank (Fritz) Malloy, Joseph Tingle, Tom Fitzgibbons, alias Thomas Church, Edward Hohmann, Emma Amsler, alias Helen E. Johnson, Elmer Hoard, Earl Tingle, J. J. Fields, and Dewey Bardone with conspiring to manufacture, sell, barter, transport, deliver, furnish, and possess intoxicating liquor and property designed and intended for use in such manufacture. When the case was called, a severance was granted as to Hohmann, and the government entered a nolle as to Rippen and Malloy. None of the other defendants except Joseph L. Tingle had been arrested, and the case proceeded to trial as to appellant alone. The jury returned a verdict of guilty.

The errors assigned are:

1. The admission in evidence, over objection, of the written statements of appellant before the government had shown or offered to show by any testimony, outside of these statements or confessions themselves, any substantially corroborative evidence of the existence of the conspiracy charged.

2. The refusal of defendant's request for a directed verdict of not guilty based upon the same ground and made at the close of the government's case.

3. The refusal of the court to instruct that the written statements and declarations of the defendant, standing alone, were not sufficient to establish a conspiracy.

4. The admission in evidence of the statements tending to prove a violation of the National Prohibition Act other than the conspiracy charged.

5. Failure of the court to rebuke certain alleged prejudicial remarks made by the Assistant United States Attorney in his closing argument to the jury.

█ The first three assignments may be considered together. Mere irregularity in the order of proof is generally permissible within the sound discretion of the court, and will not constitute reversible error provided the record ultimately contains evidence which renders competent and material that which

has thus been admitted out of order. But in conspiracy cases, the unlawful combination, confederacy, and agreement between two or more persons, that is, the conspiracy itself, is the gist of the action, and is the corpus delicti charged. It is, therefore, primarily essential to establish the existence of a confederation or agreement between two or more persons before a conviction for conspiracy to commit an offense against the United States can be sustained. This statement requires no citation of authorities. It is equally true that "extrajudicial confessions or admissions are not sufficient to authorize a conviction of crime, unless corroborated by independent evidence of the corpus delicti." Martin v. United States (C. C. A. 8) 264 F. 950. This has been the consistent holding of this court, in harmony with uniform decisions in other jurisdictions. Naftzger v. United States (C. C. A.) 200 F. 494; Goff v. United States (C. C. A.) 257 F. 294; Turinetti v. United States (C. C. A.) 2 F.(2d) 15. It is necessary, then, to determine whether there is in the record before us any substantial independent evidence of the corpus delicti, that is, the conspiracy charged, tending to corroborate the extrajudicial statements and admissions of appellant.

█ Counsel for the government seek to establish the conspiracy through the relationship existing between appellant and the defendants Hoard and Amsler or Johnson, but a painstaking examination of the record fails to support this contention. It is true that these parties were present at the warehouse; that they admitted the officers and summoned Tingle by telephone when the business of the officers was made known; but they were the employees of appellant in his oil business, and were naturally found at the warehouse where that business was operated. No testimony connects them with the brewery. Appellant's confession states that they probably knew what was being done, but were told that they were to stay away and attend strictly to their own business. There is nothing in the confessions which implicates Hoard and Johnson, and nothing in the independent testimony other than their presence at the warehouse of their employer. Knowledge without some evidence of participation is not enough. Circumstances merely arousing suspicion of guilt are insufficient. It must be remembered that appellant introduced no witnesses. The evidence was unconflicting and was that of the government alone. In such case, when the circumstances relied upon are as consistent with innocence as with guilt, they are robbed of all probative value.

Turinetti v. United States, supra. The buzzer connecting the brewery with the room adjoining it is urged as a suspicious circumstance. But this office was in a part of the warehouse leased for brewery purposes. That of appellant was on the second floor, and there is no showing that this room was ever occupied by Hoard or Johnson. In fact, the evidence before us rather negatives their ability to gain access to this part of the building. Attention is called to the appearance of the wall, indicating that a portion of it had recently been removed, presumably to admit the brewery equipment, and afterwards rebuilt. It is pointed out that the installation of the plant was necessarily the work of more than one person. Conceding to appellee the most favorable inferences to be drawn from this situation, it must still be noted that the indictment charges no conspiracy with unknown parties, and that, in any event, it must affirmatively be shown that unknown parties joined in the conspiracy. All things considered, we find no independent evidence of the corpus delicti corroborating the statements and admissions of appellant, and no evidence of conspiracy sufficient to authorize a conviction for this offense.

Inasmuch as the case must be remanded for a new trial, brief consideration should be given to the remaining assignments.

■ With respect to the fourth assignment, it is sufficient to point out that if evidence, competent and material to establish the offense on trial, incidentally discloses the commission of another, disconnected therewith, the rule that an offense not charged may not be shown as tending to prove the one for which the trial is being had is not contravened. Hood v. United States (C. C. A. 8) 23 F.(2d) 472, 475; Grayson v. United States (C. C. A. 6) 272 F. 553, 558. It would be proper in the instant case to show by appellant's confessions the circumstances under which he claims to have met Rippen and Malloy.

■ The fifth specification complains of the following language used by the Assistant United States Attorney in his closing argument:

"Mr. Rinehart: Mr. Lewis asks why aren't Bob Rippen and Fritz Malloy here? I say it is because Joe Tingle isn't willing to go on the stand and testify—

"Mr. Madison: I object to the comment of counsel, commenting on the defendant not taking the stand in his own behalf.

"Mr. Rinehart: If the court will pardon me, I don't mean in this particular case. I mean in any case. Mr. Lewis asked, if I recall, why Mr. Malloy and Mr. Rippen are not on trial.

"Mr. Madison: This is the only case on trial and counsel has commented on the failure of the defendant to take the stand and we except to it.

"Mr. Rinehart: I withdraw it. If they will come in here and testify—

"Mr. Madison: If the court please, I want to further except to that as a continuation of the same line of comment.

"The Court: Objection overruled. He is within his rights.

"Mr. Rinehart: I say now, for the United States District Attorney's office that any time Joe Tingle or any other man, is willing to come in and show the government evidence against them and produce that evidence in court, we will be more than glad to prosecute."

It is quite evident that counsel for the government, replying to a question by the defense, had no reference to the failure of appellant to take the stand in the case on trial; nevertheless, the language used was calculated to bring this fact sharply to the attention of the jury. The court in unmistakable and positive terms, emphatically and promptly, should have advised the jurors that the matter was improper and that they should give no consideration thereto. De Mayo v. United States (C. C. A. 8) 32 F.(2d) 472. It is apparent from the record before us, and was, in effect, assumed at the hearing, that appellant was guilty of a substantive violation of the National Prohibition Act (27 USCA). That, however, standing alone furnishes no support to a conspiracy charge. The judgment must be reversed, and the case remanded for a new trial. It is so ordered.